1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY ARMSTRONG,

                Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

CASE NO.    C07-5689FDB-KLS

REPORT AND
RECOMMENDATION

Noted for November 21, 2008

17

18

19

20

21

22

    Plaintiff, Amy Armstrong, has brought this matter for judicial review of the denial of her

application for supplemental security income ("SSI") benefits.  This matter has been referred to the

undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After

reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and

Recommendation for the Honorable Franklin D. Burgess's review.

23

FACTUAL AND PROCEDURAL HISTORY

24

25

26

    Plaintiff currently is 27 years old.[1] Tr. 23.  She has a tenth grade education and past work

experience as a fast food cashier, concession stand operator, certified nurse assistant, and sales

representative. Tr. 20, 68, 73, 75.

27

28

    [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to
Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

1    On December 31, 2002, plaintiff protectively filed an application for SSI benefits, alleging

2 disability as of February 6, 2002, due to bipolar disorder. Tr. 16, 58-61, 67.  Her application was denied

3 initially and on reconsideration. Tr. 23-25, 31.  A hearing was held before an administrative law judge

4 ("ALJ") on March 11, 2005, at which plaintiff, represented by counsel, appeared and testified, as did a

5 medical expert and a vocational expert. Tr. 284-322.

6    On May 23, 2005, the ALJ issued a decision, determining plaintiff to be not disabled because she

7 was capable of performing other work existing in significant numbers in the national economy. Tr. 16-22.

8 Plaintiff's request for review was denied by the Appeals Council on November 10, 2005, making the

9 ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 416.1481.  Plaintiff appealed that

10 decision to this Court, and on July 6, 2006, the undersigned issued a Report and Recommendation,

11 recommending that the Court remand this matter to the Commissioner for further administrative

12 proceedings. Tr. 353-64.  Specifically, the undersigned found the ALJ erred in evaluating the testimony of

13 the medical expert, Norman Gustavson, Ph.D., regarding plaintiff's social functioning, and directed that

14 the Commissioner on remand should re-consider that testimony and the other medical opinion source

15 evidence in the record concerning such functioning, determine what weight to give Dr. Gustavson's

16 testimony regarding that issue, and re-determine whether or not plaintiff is capable of performing other

17 work existing in significant numbers in the national economy in light of that testimony and evidence. Id.

18    On July 18, 2006, the Court adopted the undersigned's Report and Recommendation. Tr. 352.  On

19 August 25, 2006, pursuant to the Court's order, the Appeals Council remanded this matter to the same

20 ALJ, who held a second hearing, at which plaintiff, represented by counsel, appeared and testified, as did a

21 different medical expert and a different vocational expert. Tr. 365-66, 448-97.  On June 28, 2007, the ALJ

22 issued a decision, again determining plaintiff to be not disabled, specifically finding that:

23    (1)    at step one of the disability evaluation process, plaintiff had not engaged in
            substantial gainful activity since her alleged onset date of disability;

24
     (2)    at step two, plaintiff had "severe" impairments consisting of a depressive
25           disorder, an anxiety disorder and a personality disorder;

26    (3)    at step three, none of plaintiff's impairments met or equaled the criteria of any
            of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

27
     (4)    at step four, plaintiff had the residual functional capacity to perform work
28           without any physical restrictions, but with certain non-exertional limitations,
            which precluded her from performing her past relevant work; and

1

2
       (5)     at step five, plaintiff was capable of performing other jobs existing in significant
                 numbers in the national economy.

3 Tr. 336-51. On October 22, 2007, the Appeals Council declined to assume jurisdiction of this matter. Tr.

4 323; 20 C.F.R. § 416.1484. The ALJ's decision therefore became the Commissioner's final decision after

5 sixty days. Id.

6      On December 14, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's

7 decision. (Dkt. #1-#3). The administrative record was filed with the Court on March 25, 2008. (Dkt. #10).

8 Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in

9 the alternative, for further administrative proceedings for the following reasons:

10        (1)     the ALJ erred in evaluating the testimony of Thomas McKnight, Ph.D., the
                 medical expert who testified at the second hearing; and

11

12        (2)     the ALJ erred in finding her to be capable of performing other work existing in
                 significant numbers in the national economy.

13 The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set

14 forth below, recommends that while the ALJ's decision should be reversed, this matter should be

15 remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral

16 argument in this matter, the undersigned finds such argument to be unnecessary here.

17 DISCUSSION

18      This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

19 Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole

20 to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

21 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson

22 v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than

23 a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

24 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than

25 one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749

26 F.2d 577, 579 (9th Cir. 1984).

27 I.     The ALJ's Evaluation of Dr. McKnight's Testimony

28      The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion

may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

At the first hearing, Dr. Gustavson testified that plaintiff had "marked" difficulties in maintaining social functioning due to "her history of problems" with her bosses, neighbors and teachers. Tr. 315. Dr. Gustavson also testified that while there was "nothing in the record" regarding difficulties with concentration, persistence or pace, her limitations in that area were "[m]ild to moderate." Id. In addition, Dr. Gustavson testified that he found no episodes of decompensation of extended duration, although he did note "many, many decompensations of a short period." Tr. 315-16. With respect to this testimony, the ALJ made the following findings:

> Dr. Gustavson's testimony is considered, but it is not adopted. The claimant in fact has relationships with family, she has a boyfriend, and she goes to appointments when she chooses to do so. She apparently has some social limitations based on her frequent conflicts with neighbors.

Tr. 19. The undersigned found the ALJ erred in so finding, noting that the fact that plaintiff had a family and a boyfriend alone was an insufficient reason to discount Dr. Gustavson's opinion regarding her social functioning. That is, merely because a claimant can relate to his or her family or significant other, does not necessarily mean he or she is able to function effectively around others.

At the second hearing, Dr. McKnight testified that plaintiff's difficulty in maintaining social functioning varied "from a relatively mild impairment in social relationships to an expected marked limitation in a competitive job environment or training situation." Tr. 468-69. Dr. McKnight testified that the "primary issue" in terms of difficulties in maintaining concentration, persistence or pace was going to be with respect to persistence and pace, which he would expect "under an employment situation." Tr. 469. Dr. McKnight also testified that in regard to episodes of decompensation of extended periods, there had "really only been one or two." Id.

In response to additional questioning, Dr. McKnight went on to testify in relevant part that plaintiff had the following more specific mental functional limitations:

> . . . Understanding and remembering short and simple instructions, there's no limitation. Carrying out short and simple instructions, there is no limitation. Understanding and remembering detailed instructions, there's some mild to moderate limitation depending on the level of upheaval and stress in her life. The same thing is true for her ability to carry out detailed instructions. Maintaining attention and concentration for extended periods, there's a moderate limitation. Performing activities within a schedule . . . a moderate limitation. . . .Working with or near others without

REPORT AND RECOMMENDATION
Page - 5

being distracted by them, there's a mild deficit. Making simple work-related decisions, there's a mild deficit. . . . Performing at a consistent pace within a work environment is likely a moderate deficit at best . . .

. . . Interacting appropriately with the public, there's a slight limitation or mild limitation. Asking simple questions or requesting assistance is none. Accepting instructions and responding appropriately to criticism from supervisors is a moderate deficit. Getting along with coworkers and peers is mild to moderate, depending on the relationship that's been established, but likely moderate. Maintaining socially appropriate behavior is mild to moderate, again, depending on the upheaval in her life at the time. . .

Tr. 472-73. Dr. McKnight then further clarified his testimony as follows:

. . . She has a mild to moderate deficit getting along with coworkers or peers. She has a moderate limitation accepting instruction and responding appropriately to criticism from supervisors. So she's expected to walk off the job.

. . . I suspect, depending on how the criticism was offered, and most supervisors are not going to consider her idiosyncrasies in terms of telling her to hurry up or get it done faster or move here and move there, but she's going to quit.

. . . Doesn't mean she has to, but that's just what she's going to do. That's what personality disorder is.

Tr. 474-75. However, Dr. McKnight subsequently testified that he defined a moderate restriction as being:

She has some ability to function satisfactorily. She's not precluded from doing this, and it's not a severe limitation. But there are going to be occasions when she is offered these decisions to make and she's going to have problems with it. That's the moderate limitation. . . .

It was a mild limitation [sic], it would indicate she functions fairly well in this area, and that's not the case.

Tr. 475-76.

At step three of the sequential disability evaluation process, the ALJ found in relevant part as follows:

Relying partly on Dr. McKnight's opinion and considering the medical evidence and the claimant's reported activities, . . . the undersigned finds the following . . . limitations: . . . . moderate social functioning, mild to moderate concentration, persistence, or pace, and no episodes of extended periods of decompensation. Although the claimant has anxiety symptoms, she cares for and spends significant time with her young children, has interacted with one friend on a daily basis for the past three years, and has a good relationship with her mother and grandmother, including visiting them or speaking with them regularly. She maintained at least a two year relationship with the father of one of her children and, when that ended, she managed to start a new relationship with someone who was introduced to her by another one of her friends. Her mother has also reported that the claimant could go out independently, take the bus, or drive a car. Finally, the claimant managed to regularly attend her appointments at Sea Mar Community Health Center from November 2005 through April 2007. This evidence supports moderate rather than marked limitations in social functioning.

Tr. 340. In assessing plaintiff's residual functional capacity, the ALJ further found in relevant part that:

> On cross-examination, counsel highlighted the claimant's short-term work history. He noted that the claimant quit several jobs because of personality problems and difficulty interacting with coworkers and supervisors. He asked Dr. McKnight what impact that might have on the claimant's ability to function in a workplace. Dr. McKnight suspected that, depending on how the criticisms were offered, the claimant *might* quit or walk off the job, not that she had to. He also clarified that the moderate limitations he had identified for the claimant meant that she had some occasional problems in certain areas of functioning, but that did not mean she was precluded from functioning satisfactorily in those areas.
>
> The undersigned gives significant weight to Dr. McKnight's assessment because his opinion is based on the review of the entire record and is consistent with the medical evidence. Based on Dr. McKnight's responses to questions during cross-examination, the undersigned finds that the claimant is able to satisfactorily sustain a normal workday and workweek and maintain regular attendance under the residual functional capacity set forth above.
>
> Considering the claimant's limited credibility and her reported activities and giving significant weight to the opinions of Dr. McKnight, Dr. Gustavson, and Dr. [Jeff] Bremer, [Ph.D.,] the undersigned finds that the claimant is able to perform detailed but not complex tasks. The undersigned finds that the claimant learns better by demonstration and needs a job in which she is assigned tasks and allowed to perform them independently. The undersigned finds that the claimant should have no contact with the general public and limited contact with supervisors and coworkers.

Tr. 349-50.

Plaintiff argues the ALJ committed the same errors in evaluating Dr. McKnight's testimony as he did in evaluating that of Dr. Gustavson. The rationale the ALJ gave for rejecting Dr. McKnight's opinion that plaintiff would be expected to have a marked limitation in a competitive job environment or training situation, however, is not entirely the same. This time the ALJ noted additional relationships plaintiff had with people other than her immediate family and significant other. For example, the ALJ noted plaintiff was able to start at least one new relationship with someone else, to whom she was introduced by one of her friends, thereby evidencing to some extent a greater ability to interact with others socially. The ALJ also pointed out that plaintiff was able to interact with at least one friend on a daily basis for the past three years. This though does not necessarily contradict Dr. McKnight's testimony regarding plaintiff's social functioning abilities in a work or training, as opposed to social, setting.

The undersigned further finds that the fact that plaintiff may be able to go out independently, take the bus, drive a car, or regularly attend her health care appointments, also does not necessarily reflect less limited social functioning capabilities, since none of these tasks necessarily involves engaging with others plaintiff does not know well or in a more than superficial manner. The undersigned also disagrees with the

1  ALJ's interpretation of Dr. McKnight's testimony regarding plaintiff's moderately limited ability to accept

2  instructions and respond to criticism from supervisors.  As noted above, the ALJ found that Dr. McKnight

3  meant that although plaintiff might quit or walk of the job, depending on how the criticisms were offered,

4  she did not have to do so.

5      Dr. McKnight went on to state, however, that "she's going to quit . . . that's just what she's going

6  to do." Tr. 474-75.  The implication here is that even though plaintiff may not be forced to quit, the nature

7  of her mental impairment, her personality disorder, would cause her to do so. See id.  On the other hand,

8  Dr. McKnight found plaintiff at most would have only a moderate limitation in this and other areas of

9  social functioning, which he defined as having "some ability to function satisfactorily," but not being

10  precluded from performing such tasks, although there would be occasions when she would have problems

11  with them. Tr. 475-76.  Indeed, this is how the ALJ read Dr. McKnight's testimony as well.  The problem

12  here though is that this latter definition of a moderate limitation appears to conflict with Dr. McKnight's

13  testimony that plaintiff would quit her job in certain situations, which would seem to indicate much more

14  than a moderate restriction in social functioning.

15      The undersigned thus finds it is not clear whether Dr. McKnight believed plaintiff to be moderately

16  or markedly limited in her social functioning capabilities when in a work setting, or what he deemed each

17  such level of severity in limitation to mean.  Accordingly, the undersigned further finds that the ALJ did

18  not have a sufficient basis on which to find plaintiff to be only moderately restricted in social functioning.

19  This, however, does not mean the ALJ was required to find plaintiff more severely limited than the did.

20  For example, at least two other medical opinion sources in the record found plaintiff to be at most only

21  moderately limited in social functioning. See Tr. 166, 170-71, 400, 402.  Rather, the undersigned again

22  finds this matter should be remanded to the Commissioner to re-consider the testimony of Dr. McKnight

23  and Dr. Gustavson, along with the other medical opinion source evidence contained in the record, to

24  determine how severely limited plaintiff is in terms of difficulties with social functioning, and how those

25  limitations affect her ability to work.

26      Plaintiff also points out that while the ALJ found plaintiff to be mildly to moderately limited in the

27  areas of concentration, persistence or pace, Dr. McKnight did not provide any specific testimony regarding

28  how restricted she was in those areas.  The implication here is that because Dr. McKnight provided no

such testimony, the ALJ was precluded from making any finding on this issue. The undersigned disagrees. It first should be noted that, as set forth above, Dr. McKnight later in his testimony did find that plaintiff was at most only moderately limited in terms of concentration, attention and pace, and in regard to performing activities within a schedule. In addition, the majority of the medical opinion source evidence in the record, including the testimony provided by Dr. Gustavson, shows plaintiff had at most no more than a moderate limitation in those functional areas. See Tr. 128, 166, 169-71, 315, 401.

Lastly, plaintiff takes issue with the ALJ's determination that the record showed plaintiff had had no episodes of extended periods of decompensation, rather than one or two such episodes as found by Dr. McKnight. It is true that Dr. McKnight found there to have "really only been one or two" such episodes (Tr. 469), as did another non-examining consulting pscyhologist (Tr. 166). Dr. Gustavson, the only other medical opinion source to opine on this issue, found no episodes of decompensation of extended duration. Tr. 315-16. As such, more medical opinion sources found evidence of such episodes than did the one who found none. Even if the ALJ's findings here could be seen as erroneous, though, the undersigned finds any such error to have been harmless, as it had no bearing on the ALJ's ultimate disability determination. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

First, the determination concerning episodes of decompensation was employed here at step three of the sequential disability evaluation process for the purpose of determining whether or not plaintiff met the criteria of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff, however, has not challenged the ALJ's step three finding in this case. Indeed, she did not challenge the adverse step three determination contained in the ALJ's previous decision, thereby making it the law of this case. See Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."). Plaintiff thus is precluded from raising that issue here. Even if plaintiff could raise it now, furthermore, a finding that she had only one or two episodes of decompensation of extended duration does not rise to the level of severity required to establish disability at step three. See Tr. 166. In addition, with respect to her residual functional capacity, plaintiff has not shown such a finding necessarily establishes she likely would decompensate in the future or, if decompensation did occur, whether it would

1  do so with any particular frequency or duration.

2      In her reply brief, plaintiff points to a psychological evaluation conducted by Dan Neims, Psy.D.,

3  in which he opined that her prognosis was "guarded relative to avoidance behavior and mistrust," and that

4  she was "disabled from sustained gainful employment for the foreseeable 12 months or longer," as

5  providing further support for finding that she has a marked limitation in the area of social functioning. Tr.

6  435. But plaintiff has not challenged the reasons the ALJ gave for rejecting Dr. Neims's opinion (Dkt.

7  #348-49), or if he is challenging them, he has not set forth any specific bases for calling those reasons into

8  question. In addition, it is not at all clear that Dr. Neims believed plaintiff to be disabled because of the

9  guarded nature of her prognosis. It seems more likely that Dr. Neims attributed her inability to sustain

10 employment due to her "characterological dysfunction" overall, rather than specifically to a marked

11 restriction in her ability to function socially. Indeed, nothing in Dr. Neims's report indicates he felt a

12 guarded prognosis related to avoidance behavior and mistrust necessarily equated with being markedly

13 limited in her social functioning capabilities. Accordingly, the undersigned does not find Dr. Neims's

14 opinion here to be supportive of Dr. McKnight's testimony on this issue.

15 II.    The ALJ's Step Five Analysis

16     If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

17 process the ALJ must show there are a significant number of jobs in the national economy the claimant is

18 able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The

19 ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's

20 Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240

21 F.3d 1157, 1162 (9th Cir. 2000).

22     An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

23 posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

24 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the

25 medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

26 Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported

27 by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from

28 that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th

1  Cir. 2001).

2      At the second hearing, the ALJ posed a hypothetical question containing limitations substantially

3  similar to those the ALJ included in his assessment of plaintiff's residual functional capacity. Tr. 485.  In

4  response to that hypothetical question, the vocational expert testified that there were other jobs plaintiff

5  could do. Tr. 485-86.  Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of

6  performing other jobs existing in significant numbers in the national economy. Tr. 350-51.  Plaintiff argues

7  that because the ALJ improperly rejected Dr. McKnight's testimony concerning her limitations in the area

8  of social functioning, the hypothetical question the ALJ posed to the vocational expert was defective, and

9  thus the ALJ could not rely on that expert's testimony at step five.  The undersigned agrees.

10     As discussed above, the ALJ relied on that testimony at least in part in assessing plaintiff's residual

11  functional capacity.  Because the ALJ improperly evaluated Dr. McKnight's testimony, and because it is

12  not entirely clear the exact extent to which Dr. McKnight believed plaintiff to be limited in the area of

13  social functioning, it also is not clear that the residual functional capacity with which the ALJ assessed

14  plaintiff accurately reflects all of her limitations.  For the same reasons, it also is not clear that the

15  hypothetical question the ALJ posed to the vocational expert at the second hearing accurately describes

16  those limitations.  As such, the ALJ could not properly rely on that vocational expert's testimony to find

17  plaintiff disabled.  On remand, therefore, the Commissioner shall re-consider plaintiff's ability to perform

18  other jobs in the national economy as well.

19  III.     This Matter Should Be Remanded for Further Administrative Proceedings

20     The Court may remand this case "either for additional evidence and findings or to award benefits."

21  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

22  except in rare circumstances, is to remand to the agency for additional investigation or explanation."

23  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

24  which it is clear from the record that the claimant is unable to perform gainful employment in the national

25  economy," that "remand for an immediate award of benefits is appropriate." Id.

26     Benefits may be awarded where "the record has been fully developed" and "further administrative

27  proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

28  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

REPORT AND RECOMMENDATION
Page - 11

1
2
3

      (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's]
      evidence, (2) there are no outstanding issues that must be resolved before a
      determination of disability can be made, and (3) it is clear from the record that the ALJ
      would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because

issues still remain with respect to the medical evidence in the record concerning plaintiff's limitations in

the area of social functioning, her residual functional capacity and her ability to perform other jobs existing

in significant numbers in the national economy, this matter should be remanded to the Commissioner for

further administrative proceedings.

CONCLUSION

      Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff

was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for

further administrative proceedings in accordance with the findings contained herein.

      Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

the parties shall have ten (10) days from service of this Report and Recommendation to file written

objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 21,**

**2008**, as noted in the caption.

      DATED this 24th day of October, 2008.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 12